UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY KENNETH LOKEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 3:19-cv-00656 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Eli J. Richardson, District Judge

## **REPORT AND RECOMMENDATION**

In a prior action in this Court, Plaintiff Jerry Kenneth Lokey, Jr., successfully challenged the decision of the Commissioner of the Social Security Administration (SSA) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f, which resulted in a remand for the Administrative Law Judge (ALJ) to properly analyze the medical source statements of Lokey's treating physicians. *Lokey v. Comm'r, Soc. Sec. Admin.*, No. 3:17-1090, 2018 WL 2739371, at *1 (M.D. Tenn. June 7, 2018), *report and recommendation adopted sub nom. Lokey v. Soc. Sec. Admin.*, 2018 WL 4945229 (M.D. Tenn. July 3, 2018). After another administrative hearing, a different ALJ again denied Lokey's claim.

Now before the Court is Lokey's motion for judgment on the administrative record under 42 U.S.C. § 405(g) requesting reversal of the second ALJ's decision and remand for an award of benefits. (Doc. No. 20.) The Commissioner has responded in opposition. (Doc. No. 21.) Having considered the parties' filings and the administrative record as a whole, and for the reasons that

follow, the Magistrate Judge will recommend that Lokey's motion be granted in part, that the ALJ's final decision be reversed, and that this case again be remanded for further administrative proceedings consistent with this opinion.

## I. Background

### A. Lokey's First Appeal Under 42 U.S.C. § 405(g)

Lokey filed an application for DIB on September 9, 2015 (AR 183–89[1]), and an application for SSI on September 14, 2015 (AR 190–97), alleging that he has been disabled since August 1, 2014, due to back problems and bipolar disorder (AR 215, 220). The Commissioner denied Lokey's applications initially and on reconsideration. (AR 60, 61.) Lokey requested a hearing before an administrative law judge (ALJ) (AR 116–20), which was held on November 2, 2016 (AR 28). The ALJ issued a written decision denying Lokey's DIB and SSI claims on January 25, 2017. (AR 11–20.) In finding that Lokey was not disabled, the ALJ gave little weight to the June 1, 2016 peripheral neuropathy medical source statement of Lokey's treating physician, Dr. Victor Isaac, and significant weight to the October 31, 2016 medical source statement of another treating physician, Dr. Douglas Mathews. (*Id.*) The Social Security Appeals Council denied Lokey's request for review (AR 1–5), and Lokey filed an appeal in this Court requesting judgment on the administrative record. Complaint, *Lokey v. Soc. Sec. Admin.*, No. 3:17-1090 (M.D. Tenn. July 27, 2017), ECF No. 1.

Magistrate Judge Gregory Wehrman entered a report and recommendation finding, among other things, that the ALJ's one-sentence conclusion that Dr. Isaac's opinion was "inconsistent with the record as a whole, including his own exam findings[,]" violated the treating physician rule

---

[1] The Transcript of the Administrative Record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

and that the ALJ's analysis of Dr. Mathews's opinion was also inadequate. *Lokey*, 2018 WL 2739371, at *4. The Court adopted the report and recommendation and remanded the case for another hearing. *Lokey*, 2018 WL 4945229, at *1.

### B. The ALJ's Findings on Remand

A second ALJ held a hearing on Lokey's claims on March 14, 2019. (AR 863.) Lokey appeared with counsel and testified. (AR 866–67, 869–70.) The ALJ also heard testimony from a vocational expert. (AR 870–76.) On April 11, 2019, the ALJ issued a written decision finding that Lokey was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claims for DIB and SSI. (AR 825–39.) The ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements for the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since August 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since August 1, 2014, the claimant's "severe" impairments have been lumbar degenerative disc disease status post discectomy and laminectomy times two, facetectomy, and interbody fusion at L5-S1 and a bipolar II disorder (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. Since August 1, 2014, the claimant has not had an impairment or combination of impairments that has met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. Since August 1, 2014, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for lifting and carrying only twenty pounds frequently, sitting for four hours at a time, standing for four hours at a time, walking for two hours at a time, sitting for eight of eight hours, walking for eight of eight hours, standing for eight of eight hours, walking without the use of a cane, having further limitations as

> described in Exhibit 19F, maintaining attention and concentration with appropriate breaks for two hours, and adapting to occasional changes.

> \* \* \*

> 6. Since August 1, 2014, the claimant has been capable of performing his past relevant work as an automotive assembler and as a cashier. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

> \* \* \*

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 833–39.)

In concluding that Lokey was not disabled, the ALJ again found that Dr. Isaac's opinion was entitled to little weight. (AR 836–37.) Lokey did not file "written exceptions" with the Appeals Council, 20 C.F.R. §§ 404.984(a), 416.1484(a), and the Appeals Council did not "assume[ ] jurisdiction without exceptions being filed . . . within sixty days after the date of the decision of the [ALJ]," *id.* §§ 404.984(c), 416.1484(c). Thus, the ALJ's decision became "the final decision of the Commissioner after remand" on June 11, 2019, sixty-one days after the ALJ issued her decision *Id.* §§ 404.984(d), 416.1484(d); *see also Workman v. Saul*, No. CIV-19-326, 2020 WL 927689, at *2 (E.D. Okla. Feb. 26, 2020) (finding that, in a remanded case, "[i]f the Plaintiff does not file timely exceptions and the Appeals Council does not assume jurisdiction on its own authority within sixty days of the date of the ALJ's new decision, the ALJ's new decision becomes the final decision of the Commissioner after remand on the sixty-first day following the decision"); *Zayid v. Comm'r of Soc. Sec.*, No. 1:19 CV 732, 2019 WL 6974601, at *1 (N.D. Ohio Dec. 20, 2019) (same).

### C. Lokey's Second Appeal Under 42 U.S.C. § 405(g)

Lokey filed this action for review of the ALJ's decision on July 31, 2019, and the Court has jurisdiction under 42 U.S.C. § 405(g). (Doc. No. 1.) Lokey raises the following arguments on appeal: (1) the ALJ again failed to properly analyze the opinion of his treating physician, Dr. Isaac; (2) the ALJ failed to properly analyze his symptoms; and (3) the ALJ failed to properly evaluate his residual functional capacity. (Doc. No. 20-1.) The Commissioner responds that the ALJ's analysis of Dr. Isaac's opinion was adequate and that the ALJ's decision is otherwise supported by substantial evidence. (Doc. No. 21.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722

(6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts). While the rules governing DIB and SSI define "disability" in the same way, entitlement to one benefit does not necessarily entail entitlement to the other. Title II of the Social Security Act, which governs DIB, is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Lokey must establish that he had a disability on or before the last date he was eligible for insurance under Title II, which is determined based on his earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. Title XVI, on the other hand, "is a welfare program . . . [that] provides SSI benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen*, 485 U.S. at 75. To receive SSI, Lokey must show that he was disabled while his application was pending. *See* 20 C.F.R. §§ 416.330, 416.335.

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted by* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite his limitations.'" *Combs*, 459 F.3d at 643 (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past fifteen years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of his residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Analysis

In its order remanding Lokey's claims, the Court found that the ALJ's failure to meaningfully engage with Dr. Isaac's June 1, 2016 medical source statement and supporting clinical findings "represent[ed] a dereliction of duty that warrant[ed] reversal of the administrative decision." *Lokey*, 2018 WL 2739371, at *4. The Court also found that the ALJ's decision to accord Dr. Mathews's October 31, 2016 opinion significant weight and then depart from that opinion in crafting Lokey's RFC provided further evidence "that the ALJ failed to adequately explain the basis for his decision." *Id.* at *6. Despite those findings, however, the ALJ has again failed to

8

properly explain the weight given to the opinions of Lokey's treating physicians. This case must be remanded a second time so that those opinions can be properly analyzed. Given that conclusion, the Court need not reach Lokey's other arguments for reversal of the ALJ's decision. *See Western v. Berryhill*, No. 2:16-cv-00010, 2018 WL 950038, at *17 (M.D. Tenn. Feb. 20, 2018) (declining to reach plaintiff's other arguments for reversal of the ALJ's decision after finding that remand was warranted given ALJ's failure to apply the treating physician rule), *report and recommendation adopted sub nom. Western v. Soc. Sec. Admin.*, 2018 WL 1210943 (M.D. Tenn. Mar. 8, 2018).

### A. The Opinions of Dr. Isaac and Dr. Mathews and the Treating Physician Rule

On October 22, 2014, neurosurgeon Dr. Robbi Franklin found that Lokey had a displaced intervertebral disc and referred him to Dr. Isaac, "a specialist in pain medicine," for an epidural steroid injection. (AR 828.) Over the course of the next two years, Dr. Isaac treated Lokey numerous times, examining Lokey, monitoring his pain medication, and providing additional steroid injections. (AR 587–92, 694–708, 759–61, 765–92, 797–99.)

On June 1, 2016, Dr. Isaac completed a peripheral neuropathy medical source statement for Lokey. (AR 735–38.) Dr. Isaac stated that he had diagnosed Lokey with post-laminectomy syndrome and lumbar radiculopathy and that Lokey's prognosis was poor. (AR 735.) Dr. Isaac noted that Lokey suffers from pain, paresthesias, an abnormal gait, weakness, sensory loss, and cramping and burning of his calves and feet. (*Id.*) In the section of the medical source statement regarding "[o]ther symptoms, signs and clinical findings[,]" Dr. Isaac noted an August 17, 2015 EMG that showed peripheral neuropathy and the two back surgeries that Lokey underwent: a laminectomy for microdiscectomy and an L5/S1 fusion. (*Id.*) Dr. Isaac opined that Lokey is unable to sit or stand for more than thirty minutes at a time, walk or stand for more than two hours total per day, or carry ten pounds frequently (AR 736–37), and that Lokey "must . . . use a cane or other

9

hand-held assistive device" when occasionally standing or walking (AR 737). Dr. Isaac also opined that Lokey would be absent from work about three days each month and that, during a normal workday, he would need two or three unscheduled breaks for fifteen minutes each due to pain and muscle weakness and would otherwise be off task fifteen percent of the time. (AR 736, 738.)

On October 31, 2016, Dr. Mathews, who performed Lokey's back surgeries, completed a medical source statement regarding Lokey's physical functioning that provided a more optimistic prognosis than Dr. Isaac's. (AR 811–16.) Dr. Mathews opined that Lokey can stand for four hours at a time and for a total of four hours in an eight-hour workday, sit for four hours at a time and for eight hours total, and walk two hours at a time for four hours total, and that Lokey does not need to use a cane. (AR 812.) Dr. Matthews also opined that Lokey is able to lift and carry up to twenty pounds frequently and twenty-one to fifty pounds occasionally. (AR 811.)

When the opinion of a treating physician concerning the nature and severity of a claimant's condition or RFC is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ must give that opinion controlling weight in her analysis. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Gentry*, 741 F.3d at 727 (explaining that a treating physician's opinion concerning a claimant's RFC is also entitled to deference). "If the ALJ "does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence[.]" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)–(6)); *see also* 20 C.F.R. § 416.927(c)(2)–(6). An ALJ may only

10
Case 3:19-cv-00656   Document 22   Filed 08/05/20   Page 10 of 17 PageID #: 1109

decline to adopt a treating physician's RFC if she provides "good reasons" for that decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Such reasons must be "supported by the evidence in the case record[] and . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).[2] The rationale for this "treating physician rule," *Gentry*, 741 F.3d at 727, is that a treating source's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In ruling on Lokey's first appeal, the Court found that the ALJ's one-sentence conclusion that Dr. Isaac's opinion was entitled to little weight violated the treating physician rule:

> The ALJ rejected [Dr. Isaac's] opinion based solely on its purported inconsistency with Dr. Isaac's "own exam findings," yet the only findings from Dr. Isaac that are cited in the administrative opinion include spinal and paraspinal tenderness to palpation, decreased range of motion, and a positive straight leg raise examination, all of which tend to support the limitations included in Dr. Isaac's opinion. In fact, the overwhelming majority of Dr. Isaac's treatment notes document similarly supportive findings, including radiculopathy, sacroiliac tenderness, an antalgic gait, decreased sensation in the left lower extremity, a positive left-sided Patrick's test, decreased flexion, and decreased motor system strength. The ALJ's failure to acknowledge such findings, particularly in light of Dr. Isaac's inclusion of such symptoms as support for his opinion, represents a dereliction of duty that warrants reversal of the administrative decision.

*Lokey*, 2018 WL 2739371, at *4 (citations omitted). The Court also dismissed the Commissioner's argument that the ALJ's rejection of Dr. Isaac's opinion was proper because the ALJ gave Dr. Mathews's opinion significant weight. The Court found error in the ALJ's reliance upon

---

[2] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* SSR 96-2P, 2017 WL 3928298, at *1 (Mar. 27, 2017). Because Lokey filed his claims in September 2015, Social Security Ruling 96-2p and the other regulations and case law governing the treating physician rule apply to his claims.

Dr. Mathews's familiarity with Lokey without mentioning Lokey's much more extensive treatment history with Dr. Isaac and in the ALJ's unexplained departure from Dr. Mathews's opinion in crafting Lokey's RFC. *Id.* at *5–6.

Despite the Court's detailed discussion of the inadequacy of the original analysis of Dr. Isaac's opinion, the ALJ's written decision on remand again does not address the substance of that opinion before assigning it little weight:

> On June 1, 2016, Dr. Isaac rendered an opinion about the claimant's physical capabilities. As discussed above, however, the claimant made statements to him that were inconsistent with other objective evidence and even his own statements. Also, Dr. Isaac gave the claimant several warnings about improper use or maintenance of his opiates, including *two* "FINAL warning[s]" (emphasis in original) with the first before June 1, 2016 and the second nearly two months later on July 28, 2016. Finally, on that date, the claimant reported some improvement in his symptoms. For those reasons, Dr. Isaac's opinion receives little weight.

(AR 837 (emphasis and alteration in original).) The inconsistent statements to which the ALJ refers concerned the extent of Lokey's participation in physical therapy and his use of pain medication. (AR 836.)

Lokey thus correctly argues that the ALJ failed to explain why Dr. Isaac's opinion was not entitled to controlling weight. A treating physician's opinion must be given controlling weight if "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (alteration in original) (quoting 20 C.F.R § 404.1527(c)(2)). The consistency of Lokey's statements to Dr. Isaac does not address either of those factors and is instead relevant only to the ALJ's analysis of Lokey's symptoms.[3] *See* SSR 16-3p, 2016 WL

---

[3] The cases that the Commissioner cites in support of his argument that Lokey's "use of narcotics was suspicious and such use can provide an alternative explanation for the complaints made and the treatment sought" (Doc. No. 21, PageID# 1091) are consistent with this conclusion. *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) ("[T]he repeated indications that

1119029, at *8 (Mar. 16, 2016) ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities . . . , we will consider the consistency of the individual's own statements."). The same is true of Dr. Isaac's warnings to Lokey about improper use of pain medicine. Finally, the July 28, 2016 appointment with Dr. Isaac that the ALJ cites in which Lokey "reported some improvement in his symptoms" (AR 837), hardly amounts to substantial evidence that is inconsistent with Dr. Isaac's opinion. *See Gayheart*, 710 F.3d at 378 (holding "that the ALJ's focus on isolated pieces of the record is an insufficient basis for giving [treating physician's] opinions little weight"). That is especially so given this Court's previous finding that "the overwhelming majority of Dr. Isaac's treatment notes" support his medical opinion. *Lokey*, 2018 WL 2739371, at *4. Regardless, the ALJ's description of the July 28, 2016 appointment is incomplete—although Lokey reported that Embeda, an opioid

---

[claimant] seeks medication and medical treatment without cause also tend to vitiate her claims of disability by casting a cloud of doubt over the legitimacy of her numerous trips to the hospital."); *see also Allgood v. Comm'r of Soc. Sec.*, No. 1:12 CV 1513, 2013 WL 1858183, at *4 (N.D. Ohio May 2, 2013) ("Consideration of a claimant's alleged drug-seeking behavior is also proper in assessing the credibility of a claimant's statements to physicians regarding his physical pain.").

In some circumstances, an ALJ may be justified in finding that a treating physician's opinion is not well-supported by medically acceptable clinical and laboratory techniques where it is based excessively on a claimant's subjective complaints. *See Berry v. Saul*, No. 1:18-CV-00046, 2019 WL 4923979, at *7 (M.D. Tenn. Aug. 20, 2019) (collecting cases for the proposition that "a treating physician's reliance on the claimant's subjective complaints in forming an RFC assessment is a good reason to decline to give that assessment controlling weight" if the ALJ has also properly "found that the claimant's description of her symptoms is not entirely consistent with the record"), *report and recommendation adopted*, 2019 WL 4916566 (M.D. Tenn. Oct. 4, 2019). However, here, the ALJ did not find that Dr. Isaac's opinion relied excessively on Lokey's subjective complaints, nor does it appear that the record would support such a finding. As Lokey emphasizes, Dr. Isaac cited considerable objective evidence in his medical source statement, including an "electromyography (EMG) on August 17, 2015[,] which revealed evidence of peripheral neuropathy of the bilateral lower extremities[,]" and the fact that Lokey "had under[gone] lumbar surgical procedures." (Doc. No. 20-1, PageID# 1068); *see also Johnson*, 652 F.3d at 652 (rejecting ALJ's characterization of treating physician's opinion as based excessively on claimant's subjective complaints where, among other things, the treating physician had "administered an EMG test to evaluate claimant's physical condition").

medication, "worked better and for [a] long time[,]" he still ranked his pain a six out of ten when he was on medication and stated that he "need[ed] other medicine in the middle of th[e] day." (AR 797.) Dr. Isaac's exam also revealed "spinal and para[sp]inal tenderness to palpation," limited range of motion "due to pain[,]" a positive straight leg raise test on the left side, decreased sensation in Lokey's lower left extremity, and an antalgic gait, even with use of a cane. (AR 798.) Dr. Isaac continued to diagnose Lokey with radiculopathy and chronic pain syndrome. (*Id.*)

The Commissioner's only response to Lokey's argument that the ALJ overlooked the factors relevant to the controlling weight analysis is the conclusory statement that Dr. Isaac's "opinion was properly discredited because it was inconsistent with the treatment record and the record as a whole."[4] (Doc. No. 21, PageID# 1091.) The Commissioner also argues that the ALJ could not give more weight to Dr. Isaac's opinion given the ALJ's adoption of Dr. Mathews's conflicting opinion.[5] This is effectively the same argument that the Commissioner raised in

---

[4] To support that claim, the Commissioner cites *Gault v. Commissioner of Social Security Administration*, 535 F. App'x 495, 496 (6th Cir. 2013), without any discussion. That case is inapt. There, unlike here, the issue was not whether the ALJ failed to give a treating physician's opinion controlling weight. *Id.* Rather, the issue was whether the ALJ erred by not adopting certain aspects of a one-time examining physician's opinion, despite giving that opinion significant weight. *See Gault v. Astrue*, No 3:12-CV-56, 2012 WL 6764067, at *4–5 (E.D. Tenn. Nov. 28, 2012), *aff'd*, *id.*

[5] The ALJ provided the following analysis of Dr. Mathews's opinion:

> As for the opinion evidence, the opinions of Dr. Mathews and [non-examining, consulting physician] Thrush are largely consistent with each and most of the other evidence considering the claimant's abilities to sit, perform postural activities, and tolerate unusual environmental conditions. Hence, those opinions receive significant weight in those respects. Regarding lifting, carrying, pushing, pulling, standing, walking, and reaching, however, Dr. Mathews is a specialist who has seen him on several occasions, performed surgery on him once, and assisted with surgery on another occasion. Thus, where their opinions were not consistent, Dr. Mathews opinion receive significant weight, while Dr. Thrush's opinion receives little weight.

(AR 836–37.) Notably, this analysis does not mention Dr. Isaac's conflicting opinion.

opposition to Lokey's first appeal, and it fails again for the same reasons. To the extent that the ALJ discounted Dr. Isaac's opinion because of its inconsistency with the opinion of Dr. Mathews, it is the ALJ's duty, not the Court's, to say so. *See Lokey*, 2018 WL 2739371, at *5 ("Regardless of whether [the Commissioner's arguments defending the ALJ's decision to elevate Dr. Mathews's opinion over Dr. Isaac's] have merit, however, it was the responsibility of the ALJ to provide such analysis at the administrative level."). Further, the Commissioner's assertion that the ALJ "adopted" Dr. Mathews's opinion (Doc. No. 21, PageID# 1097) is again suspect. Despite giving that opinion significant weight, the ALJ's RFC departed from Dr. Mathews's opinion without explanation: Dr. Mathews opined that Lokey could stand and walk for no more than four hours total in an eight hour workday (AR 812), while the ALJ concluded that Lokey could stand and walk for eight hours (AR 835). As the Court has already found, "[s]uch departures from Dr. Mathews'[s] opinion further demonstrate that the ALJ failed to adequately explain the basis for [her] decision." *Lokey*, 2018 WL 2739371, at *6.

Because the ALJ's analysis of Dr. Isaac's opinion violated the treating physician rule, the decision denying Lokey's claims must be reversed unless the ALJ's error was harmless. "[A]n ALJ's failure to articulate good reasons for the weight given to a treating physician's opinion may constitute harmless error: (1) if the treating source opinion is so patently deficient that the ALJ could not possible credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; or (3) if the ALJ has complied with the goal of 20 C.F.R. § 404.1527(c) by indirectly attacking the supportability of the physician's opinion." *Id.* at *5 (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). Only the third basis for harmless error is arguably applicable in this case. However, the ALJ cannot be said to have met the goal of the treating physician rule by indirectly attacking Dr. Isaac's opinion because she did not discuss the content

of that opinion anywhere in her decision. Further, the Commissioner does not argue that any error in the ALJ's analysis of Dr. Isaac's opinion is harmless. Therefore, the ALJ's failure to apply the treating physician rule constitutes reversible error.

The only remaining question is whether this case should be remanded for additional administrative proceedings or an award of benefits. The length of time that this matter has been pending and the fact that it has already been remanded once are not taken lightly. However, the Sixth Circuit has held that a "court can reverse the [Commissioner's] decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Where there are conflicting opinions from a treating physician regarding the severity of the claimant's impairments, not all essential factual issues have been resolved and an award of benefits is inappropriate. *See id.* Although Lokey requests an award of benefits, he does not address the relevant standard and, because the opinions of Dr. Isaac and Dr. Mathews conflict, remand for an award of benefits is not justified. Instead, this case must again be remanded for proper application of the treating physician rule.

## IV.     Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Lokey's motion for judgment on the administrative record (Doc. No. 20) be GRANTED IN PART and that this case be REMANDED for further administrative proceedings consistent with this opinion.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 5th day of August, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge